FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Oct 16, 2018

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

MARTEL M.,

     Plaintiff,

     v.

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

No. 1:17-CV-03205-RHW

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

Before the Court are the parties' cross-motions for summary judgment, ECF

Nos. 14 & 19. Plaintiff brings this action seeking judicial review, pursuant to 42

U.S.C. § 405(g), of the Commissioner's final decision, which denied his

application for Disability Insurance Benefits under Title II and his application for

Supplemental Security Income under Title XVI of the Social Security Act, 42

U.S.C §§ 401-434, 1381-1383F. After reviewing the administrative record and

briefs filed by the parties, the Court is now fully informed. For the reasons set forth

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

below, the Court **GRANTS** Defendant's Motion for Summary Judgment and

**DENIES** Plaintiff's Motion for Summary Judgment.

### I.    Jurisdiction

Plaintiff protectively filed his application for Disability Insurance Benefits and his application for Supplemental Security Income on February 24, 2009. AR 228-37. His amended alleged onset date of disability is February 13, 2009. AR 603. Plaintiff's applications were initially denied on April 7, 2009, AR 104-05, 134-37, and on reconsideration on July 29, 2009, AR 143-44.

On February 11, 2011, Administrative Law Judge ("ALJ") Donna Shipps found Plaintiff disabled. AR 111-17. The Appeals Council reversed and remanded this decision on June 16, 2011. AR 118-25. A new hearing was held on October 18, 2011, and an unfavorable decision was issued by the same ALJ on November 3, 2011, finding Plaintiff ineligible for disability benefits. AR 16-28, 719-36, 821-70. The Appeals Council denied Plaintiff's request for review on June 21, 2013. AR 1-3. The Federal District Court for the Eastern District of Washington granted the parties' stipulated motion for remand and remanded for further proceedings on May 23, 2014. AR 765-66. The Appeals Council remanded the case, ordered a new hearing, and determined that the remaining issues consisted of whether, based on Plaintiff's residual functional capacity, he had any past relevant work that he could

perform and whether significant numbers of other jobs exist in the national economy he could perform. AR 799-803.

A hearing with ALJ Tom L. Morris was scheduled for June 26, 2015, but was cancelled to allow updated evidence to be added to the file. AR 604. On July 28, 2016, a hearing with the ALJ was held in Yakima, Washington. AR 653-702. Approximately three months after this hearing, counsel for Plaintiff filed additional medical evidence that was added to the record. AR 604. A subsequent hearing with the ALJ was held on August 24, 2017. AR 703-17. On September 28, 2017, the ALJ issued a decision finding Plaintiff ineligible for disability benefits. AR 603-16. The ALJ also incorporated by reference the portions of the previous ALJ decision that were not disturbed on appeal. *Id*. Plaintiff did not appeal this decision to the Appeals Council, making the ALJ's ruling the "final decision" of the Commissioner.

Plaintiff timely filed the present action challenging the denial of benefits, on December 12, 2017. ECF No. 3. Accordingly, Plaintiff's claims are properly before this Court pursuant to 42 U.S.C. § 405(g).

## II. Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or

1  can be expected to last for a continuous period of not less than twelve months." 42

2  U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant shall be determined to be

3  under a disability only if the claimant's impairments are of such severity that the

4  claimant is not only unable to do his previous work, but cannot, considering

5  claimant's age, education, and work experience, engage in any other substantial

6  gainful work that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

7  The Commissioner has established a five-step sequential evaluation process

8  for determining whether a claimant is disabled within the meaning of the Social

9  Security Act. 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsburry v.*

10  *Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

11  Step one inquires whether the claimant is presently engaged in "substantial

12  gainful activity." 20 C.F.R. §§ 404.1520(b) & 416.920(b). Substantial gainful

13  activity is defined as significant physical or mental activities done or usually done

14  for profit. 20 C.F.R. §§ 404.1572 & 416.972. If the claimant is engaged in

15  substantial activity, he or he is not entitled to disability benefits. 20 C.F.R. §§

16  404.1571 & 416.920(b). If not, the ALJ proceeds to step two.

17  Step two asks whether the claimant has a severe impairment, or combination

18  of impairments, that significantly limits the claimant's physical or mental ability to

19  do basic work activities. 20 C.F.R. §§ 404.1520(c) & 416.920(c). A severe

20  impairment is one that has lasted or is expected to last for at least twelve months,

and must be proven by objective medical evidence. 20 C.F.R. §§ 404.1508-09 & 416.908-09. If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required. Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings"). If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits. *Id.* If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f). If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends. *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this

burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,* 676 F.3d 1203, 1206 (9th Cir. 2012).

### III. Standard of Review

A district court's review of a final decision of the Commissioner is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited, and the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1144, 1158-59 (9th Cir. 2012) (citing § 405(g)). Substantial evidence means "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted). In determining whether the Commissioner's findings are supported by substantial evidence, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Moreover, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115. The burden of showing that an error is harmful generally falls upon the party appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

## IV. Statement of Facts

The facts of the case are set forth in detail in the transcript of proceedings and only briefly summarized here. Plaintiff was 25 years old at the amended alleged date of onset. AR 228, 235, 613. He has a high school education and he is able to communicate in English. AR 613, 706. Plaintiff has no past relevant work. AR 613.

\\

# V.    The ALJ's Findings

The ALJ determined that Plaintiff was not under a disability within the meaning of the Act from February 13, 2009, through the date of the ALJ's decision. AR 605, 615-16.

**At step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 13, 2009 (citing 20 C.F.R. §§ 404.1571 *et seq.*, and 416.971 *et seq.*). AR 607.

**At step two**, the ALJ found Plaintiff had the following severe impairments: chronic left upper extremity radial head dislocation; status post right ankle fracture and gunshot wound; and major joint dysfunction (citing 20 C.F.R. §§ 404.1520(c) and 416.920(c)). AR 607.

At **step three**, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. AR 607.

**At step four**, the ALJ found Plaintiff had the residual functional capacity to perform light work, including: he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; he can stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday; he can sit with normal breaks for a total of about six hours in and eight-hour workday; he can occasionally push and/or pull with the left upper extremity; he can occasionally climb ramps and stairs; he can

occasionally climb ladders, ropes and scaffolding; he can occasionally crawl; he can occasionally reach overhead with the left upper extremity; he can occasionally handle with the left hand; he should avoid concentrated exposure to hazards such as dangerous machinery and unprotected heights, etc.; and he will be off-task about 10% over the course of and eight-hour workday.

The ALJ found that Plaintiff is has no past relevant work. AR 613.

**At step five**, the ALJ found, in light of his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. AR 614-15. These include parking lot attendant, small products assembler, housekeeper, sales attendant, order clerk, microfilm document preparer, and charge account clerk. *Id*.

## VI. Issues for Review

Plaintiff argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, he argues the ALJ erred by: (1) improperly discrediting Plaintiff's subjective complaint testimony; (2) improperly evaluating the medical opinion evidence; and (3) failing to resolve discrepancies between the Dictionary of Occupational Titles and the vocational experts' testimony at step 5 of the sequential evaluation process.

\\

\\

# VII.   Discussion

## A. The ALJ Properly Discounted Plaintiff's Credibility.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective symptoms is credible. *Tommasetti v. Astrue,* 533 F.3d 1035, 1039 (9th Cir. 2008). First, the claimant must produce objective medical evidence of an underlying impairment or impairments that could reasonably be expected to produce some degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold, and there is no affirmative evidence suggesting malingering, "the ALJ can reject the claimant's testimony about the severity of [her] symptoms only by offering specific, clear, and convincing reasons for doing so." *Id.*

In weighing a claimant's credibility, the ALJ may consider many factors, including, "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Smolen*, 80 F.3d at 1284. When evidence reasonably supports either confirming or reversing the ALJ's decision, the Court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). Here, the ALJ found that the medically

determinable impairments could reasonably be expected to produce the symptoms
Plaintiff alleges; however, the ALJ determined that Plaintiff's statements of
intensity, persistence, and limiting effects of the symptoms were not entirely
credible. AR 609. The ALJ provided multiple clear and convincing reasons for
discrediting Plaintiff's subjective complaint testimony. AR 608-11.

The ALJ found that Plaintiff's allegations of disabling limitations are belied
by his actual level of activity. AR 609, 611. Activities inconsistent with the alleged
symptoms are proper grounds for questioning the credibility of an individual's
subjective allegations. *Molina*, 674 F.3d at 1113 ("[e]ven where those activities
suggest some difficulty functioning, they may be grounds for discrediting the
claimant's testimony to the extent that they contradict claims of a totally
debilitating impairment"); *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th
Cir. 2001). Despite Plaintiff's allegations of completely debilitating physical
limitations, chronic pain, the inability to use his left arm, difficulty lifting, an
inability to walk, and that he must elevate his right leg most of the day, the ALJ
found multiple activities inconsistent with these allegations. *See* AR 609, 611.
These inconstant activities include Plaintiff's ability to ride his bicycle for up to a
mile, his ability to walk up to half of a mile before needing to stop and rest, his
continuing to lift heavy objects, and his ability to go running in the prison yard. AR
609, 611, 1037, 1256, 1866. The ALJ reasonably found that Plaintiff's actual

activities contradict his allegations of total disability and an inability to use his left arm or walk. The record supports the ALJ's determination that Plaintiff's conditions are not as limiting as he alleges.

The ALJ also noted multiple inconsistencies with the medical evidence. AR 609-11. This determination is supported by substantial evidence in the record. An ALJ may discount a claimant's subjective symptom testimony that is contradicted by medical evidence. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Inconsistency between a claimant's allegations and relevant medical evidence is a legally sufficient reason to reject a claimant's subjective testimony. *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001). Plaintiff alleges completely debilitating pain and physical limitations; however, The ALJ noted that there are some negative findings in the record, but that the record generally shows normal and benign medical results such as Plaintiff has a normal range of motion in his extremities, no issues with his dominant hand or arm, Plaintiff consistently presented for medical treatment in no apparent or acute distress, Plaintiff had intact sensation and only moderately reduced motor strength in his ankle, and a normal gait. AR 609, 611, 1092, 1100, 1109, 1165, 1170, 1176, 1186, 1674, 2046.

The ALJ noted several inconsistent statements that undermined Plaintiff's credibility. AR 609-11. An ALJ may rely on ordinary techniques of credibility

evaluation such as a witness's prior inconsistent statements. *Tommasetti*, 533 F.3d at 1039. As stated above, the ALJ noted that Plaintiff alleges an inability to walk and that he must elevate his leg most of the day, but also states he rides his bicycle around town for up to a mile, he walks half a mile without needed to stop and rest, and he was able to play and go running in the prison yard. AR 609, 611, 1037, 1256, 1866. Additionally, the ALJ noted that Plaintiff made inconsistent statements about the cause of his left arm impairment as he told medical professionals that it occurred as a result of child abuse, AR 1090, 1286, but told an investigator that "he hurt it on the job" seven years prior, AR 611, 1658.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d at 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). The Court does not find the ALJ erred when discounting Plaintiff's credibility because the ALJ properly provided multiple clear and convincing reasons for doing so.

\\

\\

**B. The ALJ Properly Weighed the Medical Opinion Evidence.**

    **a. Legal Standard.**

The Ninth Circuit has distinguished between three classes of medical providers in defining the weight to be given to their opinions: (1) treating providers, those who actually treat the claimant; (2) examining providers, those who examine but do not treat the claimant; and (3) non-examining providers, those who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an examining provider, and finally a non-examining provider. *Id*. at 830-31. In the absence of a contrary opinion, a treating or examining provider's opinion may not be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a treating or examining provider's opinion is contradicted, it may only be discounted for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*. at 830-31.

The ALJ may meet the specific and legitimate standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating provider's opinion on a psychological impairment, the ALJ must offer more than

his or her own conclusions and explain why he or she, as opposed to the provider, is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

### b. Jeffery R. Merrill, M.D.

Dr. Merrill is a treating doctor who filled out a physical functional evaluation form in March 2013. AR 1085-89. Dr. Merrill opined that Plaintiff had marked physical limitations stemming from chronic radial head subluxation and that Plaintiff is limited to light work. AR 1086-87.

The ALJ assigned very little weight to Dr. Merrill's opinion for multiple valid reasons. AR 612. First, the ALJ noted that the opinion is inconsistent with the medical record. *Id*. Despite Dr. Merrill's opinion of marked physical limitations and mild depression, the ALJ pointed to the unremarkable examinations, including findings that Plaintiff had a normal range of motion in his extremities, Plaintiff consistently presented for medical treatment in no apparent or acute distress despite complaints of chronic pain, Plaintiff had only moderately reduced motor strength in his ankle, and a normal gait, and a plethora of mental health history inconsistent with the opinion of mild depression. AR 609, 611, 612, 1092, 1100, 1109, 1165, 1170, 1176, 1186, 1674, 2046. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999).

The ALJ also found that Dr. Merrill's opinion is internally inconsistent. AR 612. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Dr. Merrill opines that Plaintiff has marked physical limitations but also opines that Plaintiff can perform light work as the ALJ has also determined. AR 1086-87. Despite Dr. Merrill's opinion of marked physical limitations, Dr. Merrill did not even provide a brief narrative to support his opinion; rather, Dr. Merrill left many spaces blank, attached a blank range of motion chart, and attached medical records without explanation that generally demonstrate claims of pain and normal to mild examination findings. AR 612, 1085-1160.

Additionally, the ALJ assigned very little weight to Dr. Merrill's opinion because it consisted of an incomplete check-box form, with no explanation for the opined limitations, no narrative statements at all, little information regarding what Plaintiff can actually do, and blank sections of the form and blank charts. AR 612, 1085-89. "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. Furthermore, check-box form statements may be given less weight when they are conclusory in nature and lack substantive medical findings to support them or they are inconsistent with the underlying medical records. *Batson v.*

*Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014).

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Merrill's opinion.

### c. Steven Foster, M.D.

Dr. Foster is an examining doctor who completed a physical functional evaluation form in December 2014. AR 1375-79. Dr. Foster opined that Plaintiff was limited to sedentary work due to severe chronic left elbow pain. AR 1376-77.

The ALJ assigned very little weight to Dr. Foster's opinion for multiple valid reasons. AR 613. First, the ALJ noted that Dr. Foster's opinion of severely limiting elbow pain is inconsistent with the medical record demonstrating that Plaintiff consistently presented for medical treatment in no apparent or acute distress and Plaintiff has a normal range of motion and strength in his extremities. *See, e.g.* AR 09, 611, 1092, 1100, 1109, 1165, 1170, 1176, 1186, 1674, 2046. An

ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 600. Next, the ALJ noted that Dr. Foster's opinion is inconsistent with Plaintiff's actual functional ability. AR 613. While Dr. Foster opines that Plaintiff cannot lift more than ten pounds and can only walk or stand for brief periods, the record demonstrates that Plaintiff sought treatment because he was lifting a heavy object, and Plaintiff has the ability to ride his bicycle for up to a mile, walk up to half a mile, and go running. AR 613, 609, 611, 1037, 1256, 1866. An ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 600. And, an ALJ may properly reject an opinion that provides restrictions that appear inconsistent with the claimant's level of activity. *Rollins*, 261 F.3d at 856. Lastly, the ALJ found Dr. Foster's opinion to be internally inconsistent, and the ALJ noted that the range of motion charts that Dr. Foster attached to his opinion did not support the significant functional limitations he assessed. AR 613. Despite Dr. Foster's opinion of extreme limitations, the attached range of motion examination charts found Plaintiff had a normal range of motion in all but two categories, only one of which was significantly less than normal. AR 1378-79. A discrepancy between a doctor's recorded observations and opinions is a clear and convincing reason for not relying on the doctor's opinion. *Bayliss*, 427 F.3d at 1216.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of Dr. Foster's opinion.

### d. J. Dalton, M.D., David Deutsch, M.D., Myrna Palasi, M.D.

Doctors Dalton, Deutsch, and Palasi are reviewing doctors who completed one page medical evidence review forms on December 2014, April 2013, and January 2014 respectively. 1316, 1354, 1373. Each reviewing doctor briefly opines that Plaintiff is disabled due to chronic left elbow pain. *Id*.

The ALJ did not completely reject these brief opinions but did assign only very little weight to each of them. AR 612-13. The ALJ provided multiple valid reasons for similarly rejecting these three opinions. *Id*. First, the ALJ noted that each of these opinions consist of merely one page check-box forms with no explanation for the remarkably brief opinions provided. "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Bayliss*, 427 F.3d at 1216. Furthermore, check-box

form statements may be given less weight when they are conclusory in nature and lack substantive medical findings to support them or they are inconsistent with the underlying medical records. *Batson*, 359 F.3d at 1195; *Garrison*, 759 F.3d at 1014.

Next, the ALJ found that the opinions of complete disability due only to chronic left elbow pain are inconsistent with the medical record demonstrating that Plaintiff consistently presented for medical treatment in no apparent or acute distress and that Plaintiff retains a greater residual functional capacity based on the medical record presenting generally normal or mild and benign examination results. AR 609, 611, 612-13, 1092-93, 1100, 1109, 1124, 1165, 1170, 1176, 1186, 1191, 1200-01, 1205, 1209, 1216, 1233, 1235, 1244, 1245, 1314. ALJ may reject a doctor's opinion when it is inconsistent with other evidence in the record. *See Morgan*, 169 F.3d at 600.

When the ALJ presents a reasonable interpretation that is supported by the evidence, it is not the role of the courts to second-guess it. *Rollins*, 261 F.3d 853, 857. The Court "must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina*, 674 F.3d 1104, 1111; *see also Thomas*, 278 F.3d 947, 954 (if the "evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the conclusion must be upheld"). Thus, the Court finds the ALJ did not err in his consideration of the opinions of Drs. Dalton, Deutsch, and Palasi.

**C. The ALJ Met his Burden at Step Five.**

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work available in significant numbers in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f), 404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c). To meet this burden, the Commissioner must establish that (1) the claimant is capable of performing other work; and (2) such work exists in "significant numbers in the national economy." 20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran,* 676 F.3d at 1206. If the limitations are non-exertional and not covered by the grids, a vocational expert is required to identify jobs that match the abilities of the claimant, given [his] limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995).

Plaintiff contends the ALJ erred at step five of the sequential evaluation process by failing to identify jobs available in significant numbers that Plaintiff can perform despite his functional limitations. Specifically, Plaintiff states that the ALJ erred by failing to resolve conflicts between the vocational expert testimony and the Dictionary of Occupational Titles.

In this case, there were two separate hearings that each included the testimony of a vocational expert opining to the jobs available in the national

economy that could be performed despite the limitations in Plaintiff's assigned residual functional capacity.

At the first hearing the ALJ presented the vocational expert, Mr. Duchesne, with three hypotheticals with limitations similar to Plaintiff's assessed residual functional capacity. AR 653, 696-701. The first hypothetical included most of the limitations in Plaintiff's residual functional capacity but did not include imitations to handling. AR 696-97. Mr. Duchesne identified four jobs that exist in the national economy that could be performed. *Id*. The ALJ specifically asked if Mr. Duchesne's opinion deviated from the Dictionary of Occupational Titles. AR 696. Mr. Duchesne testified that the Dictionary of Occupational Titles does not distinguish between overhead reaching and different types of reaching, so his opinion regarding the identified jobs and the necessity to reach overhead was based on his knowledge of how these jobs are typically performed. AR 696-97.

Plaintiff presents no contention with this first hypothetical; however, the next two hypotheticals included a limitation to handling with the left hand, more specifically hypothetical three included a limitation of only occasional handling with the left hand, and the Dictionary of Occupational Titles provides that the jobs identified by the vocational expert require frequent handling rather than only occasional handling. AR 698-99. Due to the conflict between the Dictionary of Occupational Titles and the vocational expert testimony, the ALJ is required to

reconcile the inconsistency. *Zavalin v. Colvin*, 778 F.3d 842, 846 (9th Cir. 2015).

Defendant argues that the ALJ adequately reconciled the inconsistency when

previously asking the vocational expert if his opinion deviated from the Dictionary

of Occupational Titles and Mr. Duchesne's response that there was a deviation and

his testimony in that regard was based on his knowledge and experience.

However, Mr. Duchesne limited his testimony regarding deviation from the

Dictionary of Occupational Titles only to reaching overhead. AR 696-97. While it

is certainly possible that Mr. Duchesne's subsequent deviation regarding handling

is also based on his knowledge and experience, this is not in the record. Thus, the

Court finds that the ALJ erred by failing to resolve this conflict between the

Dictionary of Occupational Titles and Mr. Duchesne's vocational expert testimony.

Nevertheless, this error is harmless, because the ALJ held a subsequent

hearing due to the receipt of new medical evidence that included the testimony of a

separate vocational expert.

At a supplemental hearing on August 24, 2017, the ALJ presented a

hypothetical to the vocational expert, Mr. Polsin, which matched and even

exceeded the limitations in Plaintiff's assessed residual functional capacity. AR

705-717. When asked by the ALJ, Mr. Polsin testified that *any* deviation between

his testimony and the Dictionary of Occupational Titles was based on his

education, training, and experience. AR 706. Mr. Polsin then identified three

separate jobs that existed in significant numbers in the national economy that Plaintiff could perform despite his limitations. AR 705-717. While the jobs identified by the previous vocational expert were all at a light exertional level, these three additional jobs are performed at only a lower sedentary level and Mr. Polsin testified that these jobs could be performed even if the employee was off-task 15% of the workday. AR 713-16.

Plaintiff argues that the ALJ erred by inquiring into any deviation between the expert testimony and the Dictionary of Occupational Titles at the beginning of the vocational expert's testimony rather than at the end. There is no requirement that the ALJ reconcile deviations at a specific time, only that there be a valid reason for the deviation. The vocational expert testimony provided substantial evidence to support the ALJ's finding. *See Bayliss*, 427 F.3d at 1218 ("An ALJ may take administrative notice of any reliable job information, including information provided by a VE."); *Johnson v. Shalala,* 60 F.3d 1428, 1435 (9th Cir.1995). The ALJ's reliance on the vocational expert's testimony was warranted. *See Bayliss*, 427 F.3d at 1218. The ALJ properly framed the hypothetical questions addressed to the vocational expert, and the vocational expert - based on his education, knowledge, and experience - properly identified jobs available in significant numbers in the national economy that match the abilities of Plaintiff, given his limitations. The ALJ reasonably relied on the sworn testimony of the

vocational expert. Thus, the Court finds the ALJ met his step five burden by identifying jobs that exist in significant numbers in the national economy that Plaintiff can perform despite his limitations.

## VIII. Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the ALJ's decision is supported by substantial evidence and is free from legal error. Accordingly, **IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **DENIED.**

2. Defendant's Motion for Summary Judgment, **ECF No. 19,** is **GRANTED.**

3. Judgment shall be entered in favor of Defendant and the file shall be **CLOSED**.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 16th day of October, 2018.

*s/Robert H. Whaley*
ROBERT H. WHALEY
Senior United States District Judge